Is the appellant ready to proceed? Ready. Appellee? Yes, Your Honor.  Appellant. May it please the Court. My client is Seth Nicomoff, an attorney. Mr. Nicomoff was sued for the work he did for a pair of clients, Legacy and Paul Rembach. But he wasn't sued by his clients. Mr. Nicomoff was sued by the opposing party in the transaction, Jodie Kelly, who is Mr. Rembach's ex-girlfriend. Mr. Nicomoff, along with Mr. Rembach's accountant and Mr. Rembach and Legacy, have been sued for fraud, negligent misrepresentation, conspiracy to commit fraud. Mr. Rembach has been separately sued for an informal fiduciary duty breach, or Mr. Rembach has, and Mr. Nicomoff has also been sued for conspiring to assist in the breach of that fiduciary duty. This case is here on a collateral appeal because our 12B6 motion to dismiss was denied. The motion to dismiss was based on attorney immunity, a defense recognized under Texas law. We believe the district court erred when it limited the attorney immunity defense to litigation or a new category that the district court created, which it called litigation-like conduct. This was a category it created to, it appears, distinguish other cases where the attorney immunity defense has been applied outside of litigation, but the circumstances did not involve representation in a transaction, as was the case with Mr. Nicomoff. Your case pales over a division of the Texas Supreme Court, a 5-4 decision, and the question of whether or not they're not, which they've got the limit, and I read that very carefully, what they're saying, not saying. You're betting very heavily that none of those four dissenting justices on this point would join the majority in saying this is really an attorney, this is only a litigation-related immunity, derived from the adversarial context of litigation. Yes, Your Honor. That's what it comes down to, an eerie guess, an eerie, eerie guess. I agree, Your Honor. And I know you're referring to the footnote 4, where the five-justice majority said we don't have to decide it today, and we pointed out in the briefing that they mentioned the Hazen case, they mentioned the Campbell case, a couple of intermediate appellate court cases where the defense has been applied outside of litigation. And our point, Your Honor, is they didn't show any disdain towards those cases. They didn't, say, reflect on them in a negative opinion. So you're correct. Our bet is that those five justices would feel the same way if we were applying the defense outside of litigation. And in particular, with the Canty-Hanger v. Byrd case, the Court said it was litigation, but what we were looking at there is a circumstance. Well, they handled a long divorce case, and they had a divorce decree already entered, and they were just signing off on the papers to fulfill the decree. Now, that, to me, is litigation. That's still litigation to you. It doesn't really answer the question of pure transaction. Yes, Your Honor. I spent most of my life on the litigation and trial side. That's all I've ever done. So I never do worry too much about the immunity of my partners who are transactional lawyers. But I'm very protective of the immunity of trial lawyers. And one can understand the nature of it. So that's what we're kind of down to. Where does it touch the Supreme Court on that? Yes, Your Honor. And while it was a different defense, Privety and Barcelo v. Elliott, that was a transactional case. It was the preparation of trust documents. And I relied very heavily on the fact that the policy basis for the absence of Privety and Barcelo v. Elliott is the very same policy basis being applied 20 years later by the Texas Supreme Court in the litigation context for the Canty-Hanger case. Both of them concern not creating conflicting duties. Should we certify this to the Texas Supreme Court and let them sort it out? If that's what this Court chooses to do, Your Honor, I don't know. They're the Supreme Court on this issue. They are, Your Honor. If they explicitly said we don't want to decide it, that's footnote 6. That's yes. Okay. Let's just agree there's uncertainty as to whether it's a litigation-only requirement or this new category of litigation-like. Even if there is uncertainty in Texas law about that, you in your brief acknowledge that Texas law, Canty, Santiago are clear that the burden's on you. You have to meet the elements, right? Yes. And you have to meet that burden conclusively. Yes. Okay. So at the motion-to-dismiss stage, how did you meet that burden showing that this conduct alleged by her was within the scope of your representational agreement? How did you meet it conclusively? It begins with her allegation that Seth Nicomoff was Paul Rimbach's attorney. But that's sort of all you got because you have to take her allegations as given. And she goes on to say that your client, quote, received payments not just for his fee for the transaction. So at that point, the allegation is that he went outside the scope of representation in his participation in the fraudulent scheme. And I'll phrase that as a question. Was attorney immunity in Canty and attorney immunity in Santiago both decided only at the summary judgment stage? I think the answer is yes. Yes. And were there any affidavits here about what the scope of representation were? No, Your Honor. So you may win in the end, but I don't see how you can win at the motion-to-dismiss stage. Well, and one of the reasons we're here is because I don't know that I could win in the end on summary judgment either given that the district court has limited it to litigation or litigation. Right. You may persuade me or my colleagues that that's an artificial distinction, but I still don't see how if we just reduce back to what Texas law seems to be firm about that you wouldn't be able to win at this stage because she made an allegation that you went outside, you went foreign to the fraudulent conspiracy. Your client received monies not for his fee for the transaction. Once she says that, you're in the world of pool. You're in the world of attorneys going off and intercepting packages, doing things that couldn't have been part of their representational scope. Yes, Your Honor. And that's why we — But you don't want to agree with that. We don't. Our basis is under Ashcroft v. Itball, which requires more than a conclusory allegation. But the burden is on you here. Yes, Your Honor. Okay. But with respect to that, the point is, where's the substance to that allegation? And that's what we just have to find out, right? These cases seem to mostly, not all, but mostly end up at the summary judgment stage, and it really is a relatively straightforward inquiry. District judge looks at what the scope was in the representational agreement or looks at the affidavits, and at that point, you're able to compare. So if it is just what you say and primarily may be, as Ms. Kelley alleged, document preparation, you get immunity. But if your client did other things, then no. Right. And that's — the case I would use as an illustration to distinguish this, and again, talking about, you know, our belief that they — she didn't meet the required — the new pleading requirement. Exactly, Your Honor. And if the court disagrees with me, I lose. I'm back. And you're right. If you decide that the standard goes beyond litigation, I can at least tee this up. Actually, you had — you needed to win there, and frankly, just to help opposing counsel, I'm fairly convinced you're right. It shouldn't be limited to litigators only or litigation-like. But Texas hasn't decided that, and that's the eerie guess. But I'm thinking we don't even need to reach that issue here when we haven't yet fleshed out what actually occurred as to his representational attorney capacity. That'll just kick you back to the state court and you're banned and you'll be right back in the soup again. Your Honor, the case I was going to mention, Your Honor, it's — I don't believe it's more than two months old. It's a district court case out of the Eastern District of Texas, LHJB Jaffe. The site is 2007 U.S. District, Lexus. You cited that. That extends the protection to business transactions, right? I did not cite it in the briefing. Someone cited it. Okay. The briefing was submitted, I believe, before the case was decided. Okay. Law clerk must have cited it. There we go. They're good at that. Okay. Now, in that case, there are two distinctions to be made there. One, the allegations went beyond what we're talking about being conclusory here. In that case, the court — the allegations were that the attorney, Mr. Jaffe, actually owned an interest in one of the companies, GoFrac. And that took those allegations there, with respect to him individually, beyond conclusory. With respect to the law firm in that case, however, even though that was transactional, the law firm in that case was not alleged to have had any ownership. So there the distinction was made, and the court actually dismissed the law firm but kept the individual attorney in the case because of the allegations that he owned an interest in the company. And if Ms. Kelly's allegations were that Mr. Nicomoff owned an interest in the company or, with respect to the Yalek case, that he had controlled the board of directors, if there were something to take him outside of the mere preparation of documents, the exchange of information and due diligence, if that allegation fleshed out and was more than merely him perhaps receiving a bonus payment in addition to his hourly fee, I think she gets there. But here we don't know, with respect to that, okay, to what extent was he paid more than his fee? For what purpose was he paid more than his fee? Was it something that involved ownership, as was the case in Poole, or, you know, as was the case in Yalek, where the attorney was actually signing documents for the company, where the attorney is stepping out and becoming a principal for the actor and is not just an attorney? So, yes, I'm guessing the law clerk cited that case, but that case, I think, illustrates the difference, one, with respect to the second element under Canty-Hanger, when one goes beyond and is doing something foreign. But our law before Canty had been clear, Fifth Circuit law. That district judge is interpreting Texas law or was interpreting pre-Canty Fifth Circuit law? That judge is interpreting Texas law in that case. Post-Canty. Post-Canty, yes, Your Honor. And I would say, even though it's not precedential, it would be post the Iqbal Bank America or the Lassberg Bank America cases, the unpublished cases that this Court has already decided where — Now, in Trois, we left the issue open, right? Your Honor? Now you pronounce the case Trois, T-R-O-I-C-E? Trois, yeah. We did what the Supreme Court did. We said, well, we're really not sure now. Well, what you did in that case was you said you're making this allegation now, claimant, but you didn't make the allegation at the district court stage, so you've waived it on appeal. We definitely didn't have to decide that. You didn't have to reach it in Trois. But, yes, with respect to that, Your Honor, I believe that the distinction here, and I know we focused heavily on that allegation. I know that Ms. Kelly's counsel has as well. We just don't believe that that one sentence gets her over the hurdle. And if you disagree with me, if this Court decides it does, we go back to the district court. But I'm hoping that before you reach that point, you would at least give us some guidance or provide some guidance to the district court in that I can assert the defense again on summary judgment. Because where I'm left now and where my client is left now is we are unable to assert that defense at the summary judgment stage. There might be some others that would come up through the discovery. And privity is of no help to us, because the McCamish case, the Texas Supreme Court case, said privity only applies to those negligence malpractice-like claims. It was the absence of a duty with respect to the elements of the malpractice claims. And Ms. Kelly's not alleging we committed a malpractice here. So I think that deprives me of the privity defense as well. In conclusion, Your Honor, what we've got is a circumstance where Ms. Kelly is dissatisfied with her ex-boyfriend, and Mr. Nicomel finds himself in a situation where he's having to defend himself. And unfortunately, we're outside of litigation, but he's still got to deal with the attorney-client privilege. He's still got to deal with the Texas disciplinary rules. So he's in a circumstance here where his defense could be severely limited based upon the exchanges, the confidential exchanges he had with his client. Because the Court has not applied the immunity to him in this transactional stage, there may be things that would be beneficial to Mr. Nicomel that he cannot say in his defense. Thank you. Thank you, Counsel. Appellee. Good morning, and may it please the Court. My name is Chris Dove on behalf of Appellee Jody Kelly. This Court cannot affirm without doing two things that no court applying Texas law has ever done. First, applying the attorney immunity doctrine to something with no cognizable, arguable, any way relationship to litigation, however you characterize it, and then no court has ever applied it to behavior like the behavior alleged in the Second Amendment complaint. And of course, we read that Second Amendment complaint very differently than opposing counsel does. It is not limited to one allegation that Mr. Nicomel received more than a mere fee, although that is in there. Our description is of a business transaction in which he was doing business things. This is not a case where we are suing him for drawing up the stock purchase agreement by which the stock was transferred. I think I would still win if that were the case, because it had no relationship to anything like litigation. There is no sanction power of any court that would govern that. But what we are alleging here is much more than that. We are alleging personal misrepresentations at a closing where he said you are getting X and it turns out she got Y. He knew she was getting Y, not X. We are alleging that he participated in efforts to transfer property so that the company would not be worth what it was claimed, efforts to change the nature of stock into issue stock, to thwart her efforts to get what she thought she was buying, and that once the information was put in a document so that she could have access to it and find out the truth, he deliberately withheld that document from her until her payments cleared. None of this is a lawyer. But yet you acknowledge he was the — how do you pronounce the fellow's name? Nicomel. No, the other. Rembach. He was Rembach's attorney. Yes. So when you list that, he made statements at closing, he transferred property, he issued stock. Those all sound to me like what an attorney would do in a legitimate stock transfer. So just by calling it fraud, the Texas Supreme Court has said that label doesn't automatically defeat immunity. I agree with that, Your Honor. That is what Cantyhanger says. I think, though, the way you phrased the question ultimately begs the question. We agree that he said he was her attorney. We agree that he did at least one task that is uniquely attorney-like. He drew up a contract. However, non-attorneys do all the rest of that every day. It is not only attorneys that tell people what they will get in a transaction and then gain benefits from that. It is not only attorneys that transfer stock or that transfer real estate or that gain from it. When we are describing that, yes, he purported to be her attorney. He was her attorney in the fact that he drew up a contract. Besides the language, your allegation that I quoted, receiving payments not for the fee, what's your best quoting from your allegation outside the scope of representation activity he took? Instead of general description, just quote me from what you allege  Our best representation there, I think, would be that he participated in changing the nature of the stock, issuing more stock, transferring property, participating in the altering of accounting documents to describe what had happened in those transactions. So altering the integrity of the document itself, that's what you allege? Not when you say the document. We are talking about balance sheets, asset sheets, not the stock purchase agreement that he drew up. Okay. Start back at your first statement. No court has ever extended it beyond litigation. I thought all Fifth Circuit authority had until Canty. I want to be very careful in what I say because I understand this is the crux of the dispute. No court has ever extended it beyond litigation or behavior that it described as being akin to litigation or that can be fairly characterized that way. The greatest body of dispute in this court and anywhere else is what do you do with Rule 736 nonjudicial foreclosure proceedings in Texas? This is an accelerated process by which you go to a court, file an application in which you provide all of the evidence that you believe you're entitled to foreclose, ask attorney for the mortgage servicer. The borrower may then file a response saying I dispute this evidence or may file its own lawsuit claiming this is a wrongful attempt to foreclose. The whole process is not only adversarial in the sense of being litigation like. It takes place in a court, is supervised by a court, and is subject to a court. You have a case like Hazen where you have the pre-suit filings, the if you don't take that down I'm going to sue you letter that you have to do. The court said, well, that certainly does seem like litigation. You have Dixon which was after an arbitration. He files a verification and a petition for a TRO. Well, that certainly seems like litigation. But then, I mean, again, both of you are superbly prepared. Are you familiar with this February Eastern District of Texas case, LHJ or LJA? I can say that I am carefully familiar with it. I asked an associate to do a list of all the cases that have come out, and it has a summary of it, and then I don't believe I read it, much to my embarrassment. It points out, though, a distinction that was made by opposing counsel. They affirmed that the attorney immunity would not apply to somebody that allegedly had personal involvement in the transaction, in which case, once again we're back to this question, just as I can't say I said fraud, so, ha-ha, your immunity doesn't apply, he can't say, well, I am an attorney, ha-ha, the immunity does apply. It goes to the merits of what are the allegations. What's wrong with the direction of questions I was asking opposing counsel, which is Texas has created these two elements, we're trying to adhere to them, but basically by their somewhat opaque nature, they can't be decided at this early stage, once you make sufficient allegation. But they're pretty easy to decide when we get the scope of representation contract or an affidavit from the attorney. I certainly agree with you. I think you are right, and this is what, as I read the district court's opinion to hold, it holds, you have the burden, and at this stage, you can't conclusively prove your entitlement to a dismissal on this basis, and so the motion is denied. That's the motion that's before you. And I think, Judge Higginson, you're exactly right. There's no way for this Court to affirm without finding that he has conclusively in some way proven this. Are all these Texas cases that deal with immunity, do they all end up being decided in summary judgment, or is there some small cabin that gets decided, the motion is dismissed, do you know? I am not aware of any of them that are decided at the motion to dismiss stage. Off the top of my hand, I can't remember when Iqbal was decided. They are largely decided, though, on appeal from a final judgment, some of them, or at the summary judgment stage. Yeah. The problem here, as I understand it then, is in order for him to prevail, he would have to prove that there is absolutely nothing here. And certainly, I think, at least from his briefing, what counsel is trying to do is to say, attorney immunity has no reference whatsoever to litigation after Cantyhanger, which I think does not match what is argued in Cantyhanger itself, or in any case applying the attorney immunity doctrine. And furthermore, he has to show that everything that he has done falls into this, everything that we allege necessarily falls into this category, which has only ever been applied, as I read these cases, Cantyhanger itself, to the drawing of the legal doctrine. Why should attorney immunity have a reference to litigation? I beg your pardon? Why should it have a reference to litigation? I think the public policy explanation for it that is given in several pre-Cantyhanger cases and is particularly illuminated by the Cantyhanger dissent is we want to prevent there from being a gap where attorneys can walk free for malfeasance, so long as you limit it to litigation and litigation-like behavior, litigation adversarial things that take place with a court's supervision. So you're using litigation and adversarial kind of synonymously? I think the word adversarial means with an eye to litigation, headed towards litigation. What does an adversarial mean? If I have a lawyer representing me, whether or not it's litigation, isn't that lawyer representing the interest of the lawyer's client and not anyone else involved in the transaction? I think that is true, that attorney is doing that in that circumstance, but... Isn't that akin to being adversarial? I think it is an adversarial relationship, but it's not a relationship that has ever been immunized under Texas law, because in that circumstance you leave this huge gap of enforcement. You have a situation where somebody comes in, he's participating in a business deal, but because he's going to draw up the papers, he gets to say, but I was the attorney. I was merely adversarially representing my client when I was making misrepresentations, when I was helping people monkey with what was being sold. And so I can't be sanctioned by a court, and I can't be sued for what I did. I don't understand my law license to be a shield against liability for fraud, and I don't understand the Texas cases to say that either. Even Canty Hanger says independently fraudulent activities are foreign to the duties of an attorney, and the immunity does not apply. That's why, when it explained this, it said it's not that fraud is an exception to a broad immunity. It is that we're going to look at the scope of what you do. And this is where I understand you to be saying this, Judge Higginson. It does say the conduct that you do as an attorney, but it reaffirms those cases, like Poole, like Essex Crane, that say it is not the duties of an attorney to be where you're committing fraud. Independent fraud. Independent fraud. And so when you say, well, this gentleman was misrepresenting and monkeying, again, did she allege those words? Did you allege monkeyed up? What she alleged. Essex Crane is different than Poole. What she alleged was. Isn't it Essex Crane is Poole, right? Essex Crane is the Poole case. No, Your Honor. Essex Crane is a 2012 Texas court of appeals case. Poole is a 1882 case. Okay. You're right. You're right. Thank you. Essex Crane is the one where the. Well, go ahead. I interrupted myself. Quote the language that you think is demonstrating independent fraudulent activity. In our brief, what we had alleged was specifically that the allegation is that Rimbach. Not what your brief says. Just read the allegation, if you have it. If you don't have it, that's all right. It's not. I have it highlighted in front of me. I certainly, if you would care for me to. No, that's okay. I would like to stand here and read it and find these specific allegations. That's all right. They're the ones that. Maybe get back. I'd be more interested in Judge Gray's question. Why isn't the underlying policy that zealous representation regardless of what, whether we label it litigation or transaction. It would be hard to really. That's why even the district court struggled to add the word like, which seems like a very unhappy category. That will just cause a lot of mischief. Well, I will say this. Yeah. To the extent that litigation like sounds mischievous. Yeah. The Texas courts have been very comfortable for a long time with this description of the boundaries of the judicial proceedings privilege, which is inserious contemplation of a judicial or quasi-judicial proceeding. That would seem a little mischievous, but has not caused any problems in there. But why is it slightly different? What transactional attorneys don't have a sharp eye out for serious contemplation of judicial proceedings? I'm not making, saying that humorously. It's not an area I've practiced in. But I would think any good transactional lawyer would have that serious contemplation in mind. That is not how I understand the Texas courts to have applied the judicial proceedings privilege. It's not merely serious contemplation, but of a more imminent nature, not merely what happens if there is ever a lawsuit to come out of this. But to go to what Judge Graves had asked, the problem with immunizing all lawyers for their zealous conduct is that every lawyer can protest, I was just being zealous. Better Call Saul on TV can claim he's just being zealous as he is out there committing these heinous acts. That can't be the test or else you have lawyers running around free. I do not understand a law license to be a shield from liability in that regard. It is a limited doctrine that in Canty Hanger the court had said it applies only to those acts that you do as an attorney and four justices said in litigation, five justices said, I don't want to say in litigation, C, a case involving a Rule 736 nonjudicial foreclosure and C, a case involving pre-litigation conduct that the court identified as being immunized because it was pre-litigation conduct. If this court were to somehow say that this doctrine is not limited, it would not But couldn't we find that the doctrine is not limited in the way you think it is, but still he wouldn't prevail in this case? That his conduct falls outside the scope of what his representation was? I think that's exactly right, Your Honor. I think there are three ways in which we win. The first way is if this court were to hold that, make an eerie guess, Texas courts would never say that it applies to a business transaction, C, Poole, C, Essex, Crane. The second way would be to say Texas would adopt the dissent, four justices. That's one way, though. Well, if you read the language, the language of dissent is very strong and very explicit. In the last sentence, limiting the application to statements or conduct serves the ultimate goal of the law being overly broad and so on and so forth. Limited application is that also has the benefit of maintaining procedural safeguards in applied litigation, et cetera. And the majority refused to reach that issue because they didn't need to. That's correct. So it comes down to whether one of those five justices would agree with the dissent when the issue is presented to them. I think that's exactly right, Your Honor. I think that is the nature of the eerie guess presented to this Court. Okay. Second way, you win. The next step, though, is whether, you know, if we stop there, then it's a pretty clear certification question to send back. Yeah. But now the procedural posture of the case, which my colleague aptly points out, it may not be the case that's sufficiently set up for us to ask the Texas Supreme Court to answer it. And that gets back to where you are procedurally with the district court. I think that is a very good point regarding certification. I think also if the Court were to consider certification, as I understand the test this Court has stated for certification, just recently in a case called Gilbo, but this is not new. This is old circuit law. The Court does not certify just because the Texas Supreme Court has not answered a question. It is reluctant to certify, and it will not do so if the appellate decisions are in accord. And the concern that I would express to the Court about certifying is you would be sending it to the Texas Supreme Court without a single appellate decision ever saying that this immunity applies to a business transaction. There is an area of negotiation, of dispute, but this is not within that zone of dispute. So I would say not only would certification be difficult because of the posture of the case, but because this falls out of that area where there is a dispute among appellate courts. Canty-Hanger is the closest area of dispute, and as you've noted, Judge Higginbotham, what you've got there is five judges who said we're not going to decide it. Please don't read our opinion as having decided it. All that is question one. What do you do about the litigation scope? Second, what we allege in this case is not merely drawing up papers, as was the case in Canty-Hanger. It is much more than that. It is involvement in a business transaction. It is not merely drawing up a stock purchase agreement. It is personal representations. It is withholding information. It is moving property in and out of the company. It is issuance of stock. These are business-related matters. You should affirm simply because what is alleged here is not the kind of conduct that our only attorneys do. It's not especially legal in nature. Just because an attorney happens to do it doesn't make it the provision of legal services. And you can do that without deciding whether or not this attorney immunity is limited to litigation-like situations. I think that is exactly what you can do, Your Honor. This transaction is sufficiently litigation-oriented. It seems to me that you have answered the text of the law because now it means that it's not confined to litigation. This is not litigation. It is adversarial, as my colleague points out. But it is not litigation or closely related to it, as in Canty. You don't have a lawsuit. You're not representing them in that capacity. That's right. It's a lawsuit that we're talking about where the four justices want to limit it. I'm left with a question of why this case is, how we can go forward with what you say without really answering the question that's uncertain that the Texas Supreme Court refused to answer or didn't need to. We're supposed to answer it now. I think the way that I would best describe this second option, because I understand your point and you're exactly right, Judge Higginbotham. There are ways that you would write Version 2 that would... Well, I'm just trying to question. I've got to bet one way or the other. I'll bet that the Texas... One of those justices is going to join the dissent and say this is a litigation-only exception. I do not think that the Texas Supreme Court's going to say that closing transactions, these types of contracts, lawyers are enjoying an immunity, et cetera. They have all other kinds of constraints on them and you've got a lot of relations against them, but they don't have any kind of immunity. I think that's where they're headed, but who knows? I certainly don't. Judge Griggs, may I briefly conclude? You may. I think Version 2, I agree with you, Judge Higginbotham, there would be a danger that in writing it you necessarily take a position on a position you don't want to take a position on, but I think it would be the inverse of the Trois case in which this court said the immunity applies because you were defending somebody in deposition, you're filing legal briefs, that is what the immunity is all about, but we're not going to decide if it's in order to serve it. It would be the inverse. We're not going to decide that, but this is exactly like Essex Crane and Pool. This is not what the immunity is about. See Canty Hanger. The third option is the one that Judge Higginbotham had noted from the beginning. The obligation is to prove beyond all doubt conclusively that this immunity cannot apply in any circumstance, and he cannot do that. At this stage? At this stage, yes. Under the 12b-6 standard for affirmance. I share opposing counsel's reluctance for this court to send it back down without guidance on this legal question. I defer to the court's desire to adhere to principles of judicial restraint where necessary. I sure would not like to have to rebrief the same legal question and have it come up again, but if the court feels it cannot address it, I certainly understand why appellate courts are courts of review and can only review what they've been presented with. And the rebrief wouldn't be that difficult. You already have it. Evidently, it needs more work. I'm getting hostile questions from the court. Not all hostile. Thank you, Your Honor. Thank you, counsel. Well, you're sharing litigation now. Rebuttal. Yes, Your Honor. Just to address a few points quickly, Your Honor. Counsel began by saying that there has never been a case where attorney immunity has been applied to behavior like this. In response, I would say, yes, there are several cases. And I will acknowledge these are litigation cases. Guzder v. Haines and Boone. I didn't cite it in my briefing. It's a 2015 Texas Court of Appeals case. There, the alleged lying to the other side's face occurred in settlement negotiations. There, the district court, the Texas district court, dismissed the case at the motion-to-dismiss stage under Rule 91A, a fairly recent procedural creation in Texas courts to allow for dismissal very much like a Rule 12b6 motion where you focus on the pleadings. I will acknowledge that case was in litigation, but you take that environment away from it. You remove the color of the paint on the walls of the room, and the fundamental allegations are the same. The other guy's lawyer lied to my face to get me to enter into this settlement, which his client is now not performing. With respect to the sanction power and Rule 11 or in Texas State Court Rule 13 and using that as a distinction between transactional attorneys and litigation attorneys, I would point out that those rules apply to, I believe the language is pleadings, motions, and other documents filed with the court. So if one wants to look at cases like Guzder or Highland Capital Management v. Luper-Reed, another case where it was alleged that the fraud was committed in settlement. Is this another case you didn't cite? I believe the Highland Capital Management case was cited. It's an older case. One that wasn't cited? Can you give me a Westlaw cite? I don't have a Westlaw. I have a Lexis, Your Honor. A Lexis is fine. 2015, TexApp, Lexis, 5389. And I don't know. Opposing counsel may have cited it. I know I did not because it's a circumstance where that case was decided, and I think a week or two later the Texas Supreme Court issued Canty-Hanger. Oh, okay. But, again, I acknowledge that's a litigation case. This is transactional. But with respect to Rule 11, sanctioning power, there are circumstances in litigation where those rules are not going to apply to the conduct of an attorney. And what you fall back on is that other thing that the court mentioned, the Texas Supreme Court mentioned in Canty-Hanger as a limiting factor, that being the disciplinary rules. And the disciplinary rules that apply to attorneys, they don't give the other side a cause of action against the lawyer, but they're going to apply to me 24-7, 365, whether I'm in this courthouse today or I'm at the opposite side of a conference table negotiating a large deal. Those apply to all attorneys, Your Honor. There was also discussion about the other allegations, the other things Mr. Nicomoff is alleged to have done looking at the second amended complaint, the live complaint on which the motion to dismiss was decided, the exchanging of documents, the transferring of documents. I would point that in Canty-Hanger, the court pointed out that the actions of the attorney, it's not limited to things that require skill and expertise, the use of our education and training. There are ordinary activities that any person can do that are going to take place in the negotiations of a transaction, but that the attorney is expected to do, and those don't require it. This issue really matters to a lot of attorneys. I would say it really matters to, yes, Your Honor. Canty-Hanger was, what, two years ago? Texas has more than ten law schools. Has any legal scholarship looked at footnote six at all? Is there anything out there that helps us from the scholars of the world? Not to my knowledge, Your Honor, but the question is quite simple. Do we want to have two separate rules for attorneys because what we do is litigation do we get an additional defense as trial lawyers that our transactional brethren are not going to enjoy, even though many of them would probably argue with me that the deals they negotiate are far more adversarial than anything I might be doing today in front of you or doing in a district court on Friday of this week. And if there are no more questions for me, I see my time has run out. Thank you, counsel. Thank you, Your Honor.